Argued February 18, affirmed June 1, 1926.

## VILHELMINA LIIMATAINEN v. STATE INDUS-TRIAL ACCIDENT COMMISSION ET AL.

(246 Pac. 741.)

**Master and Servant—Nonresident Widow of Deceased Employee can-not Appeal from Order of Industrial Accident Commission Re-jecting Compensation Claim (Workmen's Compensation Law [§§ 6605, 6619, 6637, Or. L.]).**

1. While compensation may be awarded to nonresident widow of deceased employee in proper cases under Workmen's Compensa-tion Law (§ 6619, Or. L.), she may not appeal to Circuit Court from order of Industrial Accident Commission rejecting compensa-tion claim, in view of Section 6605, stating purposes of act, and Section 6637, authorizing appeal only to Circuit Court for county in which claimant resides.

**Master and Servant—Legislature Could Deny Right of Appeal from Industrial Commission's Orders to Residents of Foreign Countries (Workmen's Compensation Law [§ 6637, Or. L.]).**

2. Legislature could append any conditions it chose to purely statutory scheme of compensation to injured workmen or their de-pendents, and hence could deny remedy by appeal from order of Industrial Accident Commission to residents of foreign countries, as by Workmen's Compensation Law (§ 6637, Or. L.), requiring appeal to Circuit Court for county in which claimant resides.

**Constitutional Law—Statute, Denying Right of Appeal from In-dustrial Commission's Order to Nonresident Alien, Does not Violate Provisions as to Grants of Privileges, and Rights of Resident Foreigners (Const., Art. I, §§ 20, 31; Workmen's Com-pensation Law [§ 6637, Or. L.]).**

3. Workmen's Compensation Law (§ 6637, Or. L.), in effect denying right of appeal from Industrial Commission's order to non-citizen residing in foreign country, does not therefore violate Con-stitution, Article I, Sections 20, 31, prohibiting grants of privileges not belonging to all citizens, and giving white resident foreigners the rights of citizens.

Constitutional Law — Master and Servant — Statute, Denying Non-resident Alien Right of Appeal from Industrial Commission's Order, Does not Violate Privileges and Immunities, Due Process and Equal Protection Clauses (Oregon Workmen's Compensation Law [§ 6637, Or. L.]; Const. U. S., Art. IV, § 2, and Art. XIV, § 1).

4.  Oregon Workmen's Compensation Law (§ 6637, Or. L.), denying noncitizen of United States residing in foreign country right of appeal from Industrial Commission's order denying compensation, does not violate privileges and immunities, due process and equal protection clauses of Constitution of the United States, Article IV, Section 2, and Article XIV, Section 1.

Constitutional Law—Due Process is Subserved by Filing Before, and Adjudication by, Industrial Commission, of Claim of Nonresident Widow of Deceased Employee for Compensation, and She cannot Complain That She is Without Remedy or Sufficient Remedy Because Denied Right of Appeal to Circuit Court (Oregon Workmen's Compensation Law [§ 6637, Or. L.]; Const. U. S., Art. IV, § 2, and Art. XIV, § 1).

5.  Due process of law required by Constitution of the United States, Article XIV, Section 1, is subserved by filing of claim for compensation by nonresident widow of deceased employee before Industrial Accident Commission and its adjudication by that body, which has jurisdiction of person and subject matter under Workmen's Compensation Law, and hence she cannot complain under Constitution of the United States, Article IV, Section 2, or Article XIV, Section 1, that she is without remedy, or that remedy accorded is not extensive enough because denied right of appeal to Circuit Court by Workmen's Compensation Law (§ 6637, Or. L.).

Master and Servant—Resident of Foreign Country must Take Workmen's Compensation Law With Restrictions Including Denial of Appeal (§§ 6619, 6637, Or. L.).

6.  Resident of foreign country, seeking compensation for death of her husband under Workmen's Compensation Law (§ 6619, Or. L.), must take law with its restrictions, as well as benefits, including Section 6637, authorizing appeal only to Circuit Court of county in which claimant resides.

Constitutional Law—Court must Give Effect to Statutory Condition Before Amendment That Appeal from Industrial Commission's Order be Taken to Circuit Court of County in Which Claimant Resides, and cannot Amend It to Conform to Constitution (§ 716, Or. L. (Workmen's Compensation Law [§ 6637, Or. L.]; Laws 1925, p. 203, § 8).

7.  In view of Section 716, Or. L., Supreme Court must give effect to condition of Workmen's Compensation Law (§ 6637, Or. L.) before amendment by Laws of 1925, page 203, Section 8, that appeal from Industrial Commission's order rejecting claim for compensation be taken to Circuit Court of county wherein claimant resides, and if it renders statute unconstitutional, cannot amend it to conform to Constitution; residence clause being inseparably joined as part of scheme of appeals.

---

4.  See 2 R. C. L. 28.

Constitutional Law.

8. Statute will not be construed as unconstitutional, unless unavoidable.

Appeal and Error — Stipulation will not Confer Jurisdiction of Subject Matter, and Appellate Tribunal will Dismiss Appeal on Its Own Motion, Where Record Discloses Want of Jurisdiction.

9. Stipulation will not confer jurisdiction of subject matter, and, where record discloses that appellate tribunal has no jurisdiction, it will dismiss appeal of its own motion, in absence of statute requiring remand to another court.

Master and Servant—Circuit Court has No Jurisdiction of Appeal by Nonresident Compensation Claimant (Workmen's Compensation Law [§ 6637, Or. L.]).

10. Circuit Court has no jurisdiction of appeal by nonresident compensation claimant from order of Industrial Commission rejecting claim; original jurisdiction being vested exclusively in such commission by Workmen's Compensation Law, and claimant bound by all its conditions, including that of Section 6637, Or. L., that appeal be taken to Circuit Court of county in which claimant resides.

Master and Servant—Appeal will not Lie Under Workmen's Compensation Law, Unless Granted by Express Terms of Statute or by Necessary Implication (§ 6605 et seq., Or. L.).

11. Appeal will not lie in special proceeding for compensation under Workmen's Compensation Law, unless granted by express terms of statute or by necessary implication.

Master and Servant—Procedure Provided by Workmen's Compensation Law for Presenting Claims and Appeals must be Followed (§ 6605 et seq., Or. L.).

12. Procedure provided by Workmen's Compensation Law for presenting claims for compensation and taking appeals from Industrial Commission's orders must be followed.

---

Aliens, 2 **C. J.**, p. 1047, n. 48 New, p. 1070, n. 46 New.
Appeal and Error, 3 **C. J.**, p. 318, n. 47; 4 **C. J.**, p. 580, n. 28.
Constitutional Law, 12 **C. J.**, p. 787, n. 96, p. 883, n. 98, p. 883, n. 7, 9, p. 1110, n. 75, p. 1111, n. 1, p. 1142, n. 77, p. 1240, n. 97.
Courts, 15 **C. J.**, p. 802, n. 6, p. 804, n. 7, p. 806, n. 8, 13, p. 831, n. 35, p. 832, n. 36, n. 1004, n. 40.
Statutes, 36 **Cyc.**, p. 1103, n. 90, 92, 93.
Workmen's Compensation Acts, **C. J.**, p. 10, n. 51, p. 11, n. 53, 54 New, p. 12, n. 70, p. 13, n. 83 New, p. 16, n. 18, p. 59, n. 53 New, p. 104, n. 20, p. 120, n. 14, p. 121, n. 18 New, p. 832, n. 9.
See 2 **R. C. L.** 28.

From Marion: PERCY R. KELLY, Judge.

---

8.  See 6 **R. C. L.** 78.
9.  See 25 **R. C. L.** 1108.

Department 1.

AFFIRMED.

For appellant there was a brief over the names of *Mr. J. O. Erickson* and *Messrs. Carson & Carson,* with oral arguments by *Mr. Wallace P. Carson* and *Mr. Allan G. Carson.*

For respondents there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with oral arguments by *Mr. Miles H. McKey,* Assistant Attorney General, and *Mr. Walter E. Keyes.*

BURNETT, J.—The plaintiff, feeling aggrieved by the action of the State Industrial Accident Commission in rejecting her claim for compensation for the death of her alleged husband, attempted to appeal to the Circuit Court of the State of Oregon for Marion County. In that court, by her attorneys, she entered into a stipulation that the cause might be heard and determined by that court without the intervention of a jury upon certain agreed statements of facts which we condense in part as follows: That the commissioners, naming them, comprise the State Industrial Accident Commission; that on June 19, 1922, one Herman Alto, while in the employment of the Murphy Timber Company, sustained a personal injury by violent and external means in an accident arising out of the employment, from which he died two days later on June 21, 1922, and that at the time both he and the company were operating under and subject to the Workmen's Compensation Law.

For the sake of greater accuracy of statement there is here set down the following *verbatim* quotations from the stipulation:

"That the true name of said individual, commonly known at, and immediately prior to, his death as Herman Alto, as aforesaid, was at all times herein mentioned Herman Martin's Son Liimatainen, and that, for convenience, said individual is hereinafter referred to as the decedent.

"That on the seventh day of November, A. D. 1905, said decedent and plaintiff were duly and regularly married, one to the other, in the village of Kielinen, Parish of Kortesjarvi, Finland.

"That thereafter, to-wit: On the sixth day of July, A. D. 1906, said decedent emigrated from Finland to the United States of America.

"That at all the times mentioned herein plaintiff was, and now is, a resident and inhabitant of Finland, and that plaintiff has never remarried since her said marriage to said decedent.

"That subsequent to his arrival in the United States of America said decedent assumed the name of Herman Alto.

"That prior to the death of said decedent plaintiff had no knowledge of such assumption by said decedent of such name.

"That in the year 1907 plaintiff received a letter from said decedent postmarked in the State of Wyoming, but that plaintiff had no other information or knowledge whatsoever concerning the whereabouts of said decedent between said date of said departure of said decedent from Finland and said date of the death of said decedent.

"That plaintiff never did, and never did attempt to, obtain divorce from said decedent, and that plaintiff never did receive notice of any kind whatsoever that said decedent was about to, or did, obtain a divorce from her.

"That on the twenty-first day of January, A. D. 1920, a marriage license was issued by the County Clerk of the County of Lake, State of Colorado, to said decedent and one Hilda Jukkala, a true and correct copy of which said marriage license is as follows, to-wit:

" 'MARRIAGE LICENSE.

" 'The State of Colorado, Lake County.

" 'Know all men by this Certificate that any regularly ordained Minister of the Gospel, authorized by the rules and usages of the Church of denomination of Christians, Hebrews, or religious body of which he may be a member, or any . . Judge or Justice of the Peace . . .

" 'To whom this may come, he not knowing of any lawful impediment thereto,

" 'Is hereby authorized and empowered to solemnize the rites of matrimony

" 'Between Herman Alto of Leadville of the County of Lake in the State of Colorado, Previously married? Yes. Wife deceased? Yes. Divorced? When? Where? On what grounds? And Mrs. Hilda Jukkala of Leadville of the County of Lake in the State of Colorado. Previously married? Yes. Husband deceased? Yes. Divorced? When? Where? On what grounds? and to certify the same to said parties, or either of them under his hand and seal, in his ministerial or official capacity, and, thereupon, he is hereby required to return his certificate in form following: as hereto annexed.

" 'In testimony whereof, I have hereunto set my hand and affixed the seal of the said County at Leadville this 21st day of January, A. D. 1920.

" 'JOHN GREGORY,
" 'County Clerk.'

"That said marriage license bears endorsements as follows, to-wit:

" 'Marriage License No. 163268
" 'Herman Alto
and
" 'Mrs. Hilda Jukkala
" 'Issued and Registered Jan. 21, 1920.
" 'Married Jan. 21, 1920.
" 'Returned Jan. 24, 1920.'

"That pursuant to said marriage license said decedent was, under said assumed name, married to said Hilda Jukkala in the City of Leadville, County of

Lake, State of Colorado, on said twenty-first day of January, A. D. 1920.

"That no children were born, as the issue of said marriage of said decedent and said Hilda Jukkala."

The document goes on to say in substance that the decedent and Hilda Jukkala lived separate and apart from one another for a period of one year prior to his death, during which time he contributed nothing to the support of her or her children; that she filed a claim for compensation with the defendants as the widow of the decedent, which was allowed and payments made for a time and afterwards suspended, the defendants having been informed that the decedent and plaintiff had never been divorced from one another. Also the paper says that within one year after the fatal injury of the decedent, the plaintiff filed her claim with the defendants for compensation as his widow, which was rejected.

The stipulation concludes with the following language:

"That thereafter, and before the expiration of sixty days following said twenty-sixth day of June, A. D. 1924, to-wit: On the twenty-fifth day of August, A. D. 1924, plaintiff duly filed with the County Clerk of the County of Marion, State of Oregon, a notice in due and proper form of her appeal to said above-entitled court from said above-mentioned order of defendants, which said notice of appeal was duly served on defendants on said twenty-fifth day of August, A. D. 1924, in the manner prescribed by law, all of which is made more particularly to appear by said notice of appeal and the certificate of service thereof thereunto attached and filed in said above-entitled court and cause.

"That said appeal of plaintiff has been duly and regularly prosecuted and is now properly before said above-entitled court for determination."

On September 2, 1925, the Circuit Court, by its judgment order, found and determined that inasmuch as the plaintiff, Vilhelmina Liimatàinen, is not and never has been a resident of Marion County, Oregon, or the State of Oregon, no appeal herein to the above-entitled court is authorized by law and on that account dismissed the appeal of the plaintiff.

Section 6637, Or. L., reads thus in part:

"The commission shall have full power and authority to hear and determine all questions within its jurisdiction, but any beneficiary not satisfied with the decision or findings of said commission, may, within thirty days after notice of the final action of such commission, appeal to the circuit court of the state of Oregon for the county in which such claimant resides."

1. There is no question but that in proper cases compensation may be awarded to the widow of a deceased employee who is subject to the Workmen's Compensation Act, although the widow may be a nonresident: Section 6619, Or. L., subtitle "Dependent." The question is as to the extent of her remedy in case the commission refuses her claim. The scope and intent of the act creating the scheme of Workmen's Compensation under which this proceeding is inaugurated is thus stated by Mr. Justice McBRIDE in *Evanhoff* v. *State Industrial Acc. Com.,* 78 Or. 503 (154 Pac. 106):

"The state says to the employer and employee alike: 'We present to you a plan of accident insurance which you may accept or reject at your own pleasure. If you accept, you must be bound by its terms and limitations; if you reject it, the courts are open to you with every constitutional remedy intact. Take your choice between our plan and such remedies as the statute gives you.'"

The state in its munificence devised a scheme for the relief of workmen from the hazards of certain employments. The preamble to the original act, codified as Section 6605, Or. L., reads thus:

"The state of Oregon recognizes that the prosecution of the various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the state involves the injury of large numbers of workmen, resulting in their partial or total incapacity or death, and that under the rules of the common law and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, a great and unnecessary cost is now incurred in litigation, which cost is divided between the workmen, the employers and the taxpayers, who provide the public funds, without any corresponding benefit, to maintain courts and juries to determine the question of responsibility under the law as it now exists, and that the state and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, and that this burden should, in so far as may be consistent with the rights and obligations of the people of the state, be more fairly distributed as in this act provided."

2. With this situation in view, and referring, as the act does, "to the rights and obligations of the people of the state," and likewise with the design of curtailing to a certain extent the expense of the maintenance of the courts and the cost of litigation, the legislature provided, as one of the conditions of the act, the requirement that an appeal to the Circuit Court from the Accident Commission was not to be taken indiscriminately to any Circuit Court, but only to the Circuit Court of the State of Oregon for the county in which such claimant resides. To this

purely statutory scheme for the financial ·betterment of the injured workman or his dependents, the legislative assembly had a right to append such conditions as it chose. It could provide a remedy by appeal for a resident of the state and leave out of that benefit the residents of foreign countries. The laws of this state are made primarily for the benefit of its own people and the present law under its terms relating to industrial accidents is avowedly made with that end in view. The state is under no obligation to provide largess for nonresident aliens, and may limit their access to its courts to narrower bounds than those accorded to its residents.

3. The contention has been made that, so far as this nonresident alien claimant is concerned, to deny her the right of appeal is forbidden by Sections 20 and 31 of Article I of our state Constitution. The parts of the state organic act invoked in support of this contention read thus:

Section 20. "No law shall be passed granting to any citizen or class of citizens privileges or immunities which upon the same terms, shall not equally belong to all citizens."

Section 31. "White foreigners who are or may hereafter become residents of this state shall enjoy the same rights in respect to the possession, enjoyment and descent of property as native-born citizens."

Section 20 refers only to citizens, and does not in any way apply to aliens, while Section 31 is applicable alone to white foreigners who are residents of this state. Being at all times "a resident and inhabitant of Finland" the claimant is not within the protection or favor of either of the clauses of our Constitution above mentioned. She is neither a citi-

zen of this state nor a white foreigner residing therein.

4. It is also urged that the statute and the decision of the Circuit Court in dismissing the appeal are not in accord with the following excerpts from the national Constitution:

"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several states." Article IV, Section 2.

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article XIV, Section 1.

If, like the country quack who was adept in turning any ailment into fits, and then was "death on fits," we could by some *quasi*-legislative magic transform the nonresident Finland widow into a citizen of the United States or a person within the jurisdiction of this state, there might be some basis for invoking for her the provisions of the Fourteenth Amendment of the federal Constitution. But she is not and never has been a citizen of the United States, nor a person within the jurisdiction of Oregon. There is presented in the record no question involving a citizen or a resident of this state.

5. If, in the instant case, we concede that any property right of the claimant is involved, rather than a mere offer of a bounty provided by the state, the due process of law feature is subserved by the Finland widow filing her claim before the Industrial Accident Commission and its adjudication by that body. In a due process of law devised by the In-

dustrial Accident Commission statute she applied to the Commission for an allowance. She had a hearing before that legally constituted tribunal, and by it her claim was denied. She has had due process of law in an adjudication by a tribunal possessing jurisdiction both of the person and of the subject matter. The procedure before it is a remedy and the claimant has no standing under either of the constitutional excerpts noted to complain that she is without remedy or that the remedy afforded her is not extensive enough for her purpose. This is in accord with the doctrine laid down by Mr. Justice RAND in his discussion of these sections in *Alsos v. Kendall,* 111 Or. 359, 366 (227 Pac. 286).

6, 7. The claimant was at all times a resident and inhabitant of a foreign country, seeking to take advantage of the law, and must take it not only with its benefits but with its restrictions. She had her day in court, so to speak, before the Commission, which is vested with the authority to determine such things in the first instance. She had her hearing before that tribunal and if she would appeal she must bring herself clearly within the terms of the statute by appeal to the Circuit Court of the county in which she resides. There being no "county in which she resides" she does not come within the category of those who can appeal. She cannot point to any word of the statute under which she is acting which authorizes her to carry the case any further. To allow her an appeal as the statute stood prior to the amendment of 1925, Laws of 1925, Chap. 133, would be to add to the enactment some such language as this:

"Provided, that if the claimant does not reside in this state, he or she may appeal to any circuit court in the state."

That we are forbidden to do this is taught by Section 716, Or. L., quoted with approval by Mr. Justice Rand in his opinion denying a rehearing in *Barrett v. Union Bridge Co.*, 117 Or. 566 (245 Pac. 308), decided April 6, 1926, reading thus:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted, and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

Thus taught and commanded, we are bound to give effect to the condition that the appeal must be taken to the Circuit Court of the county of the claimant's residence. We cannot ignore it nor delete it. If it renders the enactment unconstitutional, we cannot amend it so as to make it conform to the organic law. The residence clause is inseparably joined as part of the scheme of appeals and we cannot rightly reject it without destroying the system.

8. We must remember also that it is a rule of long standing that a statute will not be construed as unconstitutional unless it is impossible to avoid that conclusion. The people who enacted this law were not compelled thereto by any authoritative command, but were actuated by the sentiment set out in the preamble, to provide a bounty for injured workmen and their dependents by a plan which would avoid rather than encourage litigation. They had a right to afford the privilege of appeals to those upon

whom in part would fall the expenses of the courts to which the appeals were taken, and to deny appeals to those who have no interest in our institutions. It was in the nature of a free offer, which no one was obliged to accept or be bound by, but it is common sense, as indicated in the excerpt from the opinion of Mr. Justice McBRIDE, *supra,* that if the offer is accepted it must be accepted with all its terms favorable or unfavorable, appeal for residents and no appeal for nonresident aliens. In providing for drafts on the public funds, the people were not required to and did not open the doors of the treasury that "all who would might enter," but they were entitled to and did surround their bounty with such restrictions as they chose. We owe no duty to nationals of foreign countries, not residing within our borders, and we violate no provision of the Constitution, either of this state or of the United States thus far quoted, by withholding the right of appeal from nonresident foreign claimants.

In the case of *Industrial Com. of Ohio* v. *Monroe,* 111 Ohio, 812 (146 N. E. 213), the Supreme Court of that state held that the right of appeal being statutory, it was constitutional for the legislature to deny all rights of appeal in certain classes of cases. In *Maguire's Case,* 120 Me. 398 (115 Atl. 176), the statutes required the appeal to be taken to the courts of the county in which the injury occurred, but for some reason an appeal was attempted to another county. The court held:

"In the instant case the injury occurred in the town of Monmouth in the county of Kennebec. * *

"Without considering the merits of the case, the preliminary question is raised whether the appeal was

so taken and perfected as to give this court jurisdiction; it being lodged in a county other than that in which the injury occurred.

"The tribunal known as the Industrial Accident Commission, and all proceedings thereunder, are purely creatures of the statute. No jurisdiction is conferred except as the statute confers it. Therefore the statutory requirements must be strictly complied with. Under the statute, Kennebec county alone had jurisdiction. The precise and unambiguous language of the act permits no other conclusion."

The court held in effect that where a court is proceeding not according to the course of the common law, but by some special statutory provision, it is not a court of general jurisdiction and hence its authority to act must clearly appear and be strictly followed: *Gregutis* v. *Waclark Wire Works Co.*, 86 N. J. L. 610 (92 Atl. 354), was a case involving a construction of the Industrial Accident law of that state. The plaintiff had attempted to bring an action under what is known as the death act, much like our own statute on that subject, Section 380, Or. L. It was claimed there, as here, that there was a discrimination in the statute against foreigners, but the court, after a careful analysis of the question, said this:

"The result is that where, as here, the employee contracts to work under section 2 of the Workmen's Compensation Act, the damages to be paid by the employer in case of death are limited by that act and an action cannot be maintained in disregard of that act. And this is so, notwithstanding that act provides (paragraph 12) that 'compensation under this schedule shall not apply to alien dependents not residents of the United States.' The scheme of the act is to give compensation in lieu of damages to certain dependents, and not to next of kin as such.

The legislature saw fit, as a matter of public policy, to exclude nonresident aliens from such benefits, and we think that the power of the legislature to give or withhold a right of action in such case, and to declare to whom and in what amount compensation shall be made, cannot be doubted.''

A valuable, well-reasoned case on the subject of discrimination against foreigners is *Maryland Casualty Co.* v. *Chamos,* 203 Ky. 820 (263 S. W. 370). There, as here, a foreigner within the jurisdiction of the state had a fatal accident. The claimants were his widow and his dependent children who resided in Hungary and had never been in the United States. As in the instant case the contention was made on behalf of the foreign widow and children that a discrimination was made against them in the allowance of only one-half compensation, and they relied upon the Fourteenth Amendment to the federal Constitution. The court said:

''To begin with, it readily will be seen that appellees are not citizens of the United States under that section of the Amendment, since they were neither born here nor are they naturalized; neither are they subject to the jurisdiction of either the United States or of this or any other state. Therefore, according to the express terms of the Amendment there exists no inhibition against any state making or enforcing any law abridging any supposed privileges or immunities of appellees, since the power in the state to do so is therein withheld only as to 'citizens of the United States.' Neither is the provision therein, 'nor deny to any person within its jurisdiction the equal protection of the laws,' applicable to the facts in this case, since appellees have never been within the jurisdiction of this commonwealth. If they were corporeally here and thereby properly classified as resident aliens, then the last-quoted language might be invoked by them if the rights sought to be enforced

were of such a nature as to entitle them to rely on that provision; and the same is true with reference to the other provision that 'nor shall any state deprive any person of life, liberty or property, without due process of law.' But before that provision may be invoked against the validity of the laws of a state, it must appear that the one relying thereon is about to be deprived of his life, liberty, or property. Workmen's Compensation Acts are held to be founded in the public policy of the state or country enacting them, and primarily the public policy purpose is to provide a means by which the resident dependents of a deceased employee may be maintained without becoming a burden upon the public treasury, and which is somewhat analogous to that underlying exemption statutes. If therefore the dependents could not become a burden upon the public because of their nonresident alienage, it necessarily follows that it was competent for the legislature to withhold from such class the benefits of the statute, which principle of law is thoroughly settled by both text-writers and opinions of courts of last resort.''

The same doctrine is taught in *Frasca* v. *City Coal Co.,* 97 Conn. 212 (116 Atl. 189). See, also, *Liberato* v. *Royer,* 81 Pa. Sup. 403; Id., 281 Pa. 227 (126 Atl. 257). In *Lower Vein Coal Co.* v. *Industrial Board of Indiana,* the Supreme Court of the United States upheld a discrimination between coal mining and other hazardous employments whereby the legislature applied the workmen's compensation system to one making it compulsory, while leaving it permissive or not applying it at all as to the others, saying that such legislation did not invade the rights of a coal company under the Fourteenth Amendment. That an appeal might be given to some parties interested and not to others is taught in *Taggart* v. *Claypole,* 145 Ind. 590 (44 N. E. 18, 32 L. R. A. 586), where it was held that in proceedings to annex land

to a city, the grant of right of appeal to resident freeholders only does not deny to nonresident holders equal privileges or immunities, the principle being that there was a just classification between residents and nonresidents and that if the same immunities or restrictions were assured to all in the same class it was equal protection of the laws.   In this instant case a liberal offer has been made to those who suffer by industrial accidents, either directly or by loss of a supporting relative.   All who are situated alike are treated alike by that statute.   The people in their legislative function had a right to make the offer *ex gratia,* with such conditions as they deemed just. They had a right to prefer their own people and were not required to give to nonresident aliens the same bounty under the same benefits of appeal as were assured to residents within our own jurisdiction.

9. True enough, the stipulation says "that said appeal of plaintiff has been duly and regularly prosecuted and is now properly before said above-entitled court for determination."

It is hornbook law, however, sustained by countless precedents, that stipulation will not confer jurisdiction of the subject matter.   As stated in Elliott's Appellate Procedure, Section 12,—

"Jurisdiction of the subject cannot be given to any court by the parties since such jurisdiction can be conferred only by law. * * Where the record discloses the fact that the appellate tribunal has no jurisdiction, that tribunal will, of its own motion, dismiss the appeal unless there is a statute requiring that the case be remanded to another court."

The rule is thus stated in 15 C. J. 802:

"It is not within the power of litigants to invest a court with any jurisdiction or power not conferred

on it by law, and accordingly it is well established as a general rule, that, where the court has not jurisdiction of the cause of action or subject matter involved in a particular case, such jurisdiction cannot be conferred by consent, agreement or waiver, So also if the court cannot try the question except under particular conditions or when approached in a particular way, the law withholds jurisdiction unless such conditions exist or unless the court is approached in the manner provided, and consent will not avail to change the provisions of the law in this regard." *Catlin* v. *Jones,* 56 Or. 492 (108 Pac. 633).

10. The claimant contends, however, that the Circuit Court has jurisdiction over the subject matter and cites numerous authorities to the extent that a voluntary appearance by an adverse party confers jurisdiction. The fallacy of the argument for the claimant is that the Circuit Court has jurisdiction of the subject matter. It is too plain for controversy that if the claimant, ignoring the Commission, had undertaken to enforce her claim for compensation under the Industrial Accident Law by filing it in the Circuit Court in the first instance, no relief could have been granted her. The original jurisdiction over such matters is vested exclusively in the Commission, for the statute says, "The commission shall have full power and authority to hear and determine all questions within its jurisdiction."

11. Operating as she has attempted to do, solely under the Workmen's Compensation Law, the claimant is bound by all its conditions, one of which is that if she desires to appeal she must appeal to the Circuit Court of the county in which she resides. As said by Mr. Justice McBRIDE in *Smith* v. *State Industrial Acc. Com.,* 104 Or. 640 (208 Pac. 746):

"From special proceedings of this character appeal will not lie, unless granted by the express terms of the statute or by necessary implication"; citing authorities.

12. This was quoted with approval in *Chebot* v. *State Industrial Acc. Com.*, 106 Or. 660 (212 Pac. 792). Again, as said by Mr. Justice COSHOW, in *Butterfield* v. *State Industrial Acc. Com.*, 111 Or. 149 (223 Pac. 941, 226 Pac. 216):

"The procedure provided by the act for presenting claims must be followed, and the procedure on appeals must likewise be followed. Both are statutory."

The question was directly decided in *Graves* v. *State Industrial Acc. Com.*, 112 Or. 143 (223 Pac. 248), and in *Dragicevic* v. *State Industrial Acc. Com.*, 112 Or. 569 (230 Pac. 354). The Graves case was decided against the claimant, although he was a resident of the State of Oregon, because he had undertaken to appeal to the Circuit Court of a county not of his residence. The Dragicevic case was an instance where the claimant was a resident of Jugo-Slavia, a foreign country, and it was held he could not appeal to the Circuit Court of Deschutes County in this state. The reason of the rule is aptly stated in the language of Mr. Justice McBRIDE in the Evanhoff case above cited, and needs no further or better elucidation. The Circuit Court had no jurisdiction over the subject matter because that was vested primarily in the Industrial Accident Commission. Jurisdiction on appeal could not be conferred upon the Circuit Court by stipulation, and it made a correct disposition of the case by dismissing the appeal. Its judgment is affirmed                      AFFIRMED.

McBRIDE, C. J., concurs.

COSHOW and RAND, JJ., concur in result.